*The opinion of the Court was delivered by
Johnson, J.
The utmost strictness, promptitude and fairness are indispensably necessary to the existence and usefulness of commerce. We are then to inquire whether the plaintiff has been wanting in any of these particulars, in relation to the subject-matter of the present action.
The first objection, that the notice of non-payment to the defendant assumes a fact, which did not exist at the time it was given, to wit, that the drawer had made default; because the drawer had the whole of that day to make payment. It should be here recollected, that demand of payment had been made of the drawer on the last day of grace, and that the notice of non-payment was given after the banking hours of business *71 on the same day, and that this was the known and established custom of the bank; payment therefore on that day, became impracticable after the usual hour, unless as an especial favor. It therefore became morally certain, that the drawer would not pay during the day; and the notice to the defendant fairly states what was the existing state of things, in as strong terms as was possible to express it. Why, I would ask, is notice necessary? It is to enable the endorser to take the earliest possible means of indemnifying himself. Now if the plaintiff had said to the defendant, the note has been presented for payment to the drawer, the banking hours are past, and it is not paid, and the note will be protested at nine o’clock to-morrow; or if he had said in so many words, the drawer has refused to pay the note, he would not have expressed the real state of things more conclusively than does the notice in question. It cannot therefore be believed, that any vigilant man (and every merchant ought to be so) would have remained quiet, unless he was content to pay the note. Instead of its being imputable to the plaintiff as a laches, it would rather seem to be a complaint, that he had acted towards the defendant with more promptness and fairness than were required by the most strict rules of law. *lt is in general true, that any, the least indulgence given to the drawer of a promissory note, without the consent of the endorser, will discharge him. Chitty on Bills, 212. The fact that indulgence was given to the drawer in the present case, is attempted to be inferred from the expression in the notice of demand, viz.: “ You will please to have it settled by nine o’clock in the morning, to prevent its being returned under protest.” This expression, it is insisted, extended the time of payment to that hour. When taken in connection with the state of things that existed, and the subject to which it related, it would be a strange perversion of language to give it such a construction. The notice taken together is in the first place a demand of payment, and that which follows, is certainly nothing more than a threat, that the note would be returned to the bank protested, at nine o’clock on the next day, unless it was before settled. This paper being inland, no protest was indispensably necessary; but, under any circumstances, the protest was as early as is required. But surely a threat to protest, can never be construed to mean an indulgence to the party.
The only remaining ground is, that the defendant was discharged by the plaintiff’s having parted voluntarily with the possession of the goods of the drawer, deposited in his hands, as a security for the payment of these, among other debts due by him.
If the holder accepts a deposit as a security, and part with it without the consent of the endorser, he forfeits his claim upon the endorser. But there are no circumstances in this case, which warrant the conclusion, that any deposit was made on account of these notes. They did not then exist, and there is no evidence that they were renewals of notes then held by the plaintiff, unless it be the inference drawn by the defendant, that the drawer became insolvent, and could not have obtained an original credit; which I think is too much strained to be entitled to much weight; for, strange as it may be, men who are apparently insolvent, sometimes find the means of gaining *credit. Besides, the evidence as to the object of the deposit, if that is to be believed, shows that it was for a different and specific purpose, unconnected with these notes; and *72 although other demands existed, he had no right to detain it after these purposes had been attained.
Hayne, for the motion. Geddes, contra.
I am therefore of opinion, that the motion for a new trial ought to be rejected.
Colcock and Gantt, JJ., concurred.